# MIRER MAZZOCCHI & JULIEN, PLLC

ATTORNEYS AT LAW
1 WHITEHALL ST., 16TH FLOOR
NEW YORK, NEW YORK 10004

JEANNE MIRER  TELEPHONE: (212) 231-2235  RIA JULIEN
KRISTINA MAZZOCCHI  FACSIMILE: (212) 409-8338

August 14, 2020

<u>Via CM/ECF</u>
Magistrate Judge Hon. Katharine H. Parker
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        Re: **Letter Motion to Approve Proposed Settlement**
           *Guerra v. J.A.E.-L.A.R. et al, 19-cv-4144*

Dear Hon. Magistrate Judge Parker:

  Pursuant to Federal Rule of Civil Procedure 41(a), Plaintiff Ignacio Guerra ("Plaintiff Guerra" or "Plaintiff"), and corporate Defendant/Counterclaim Plaintiff J.A.E.-L.A.R. Restaurant Corp. doing business as Caridad Restaurant, as well as managers and/or owners Amaury Espinal, Amin Espinal and Laura Rodriguez, jointly and severally (collectively, "Defendants") (Plaintiff and Defendants, collectively the "Parties") submit this joint letter motion requesting that the Court approve the Parties' proposed Settlement Agreement (Exhibit I), and to dismiss this case with prejudice per the enclosed Stipulation of Dismissal with Prejudice (Exhibit A to Settlement Agreement, Exhibit I).

## **PROCEDURAL POSTURE**

  Plaintiff filed this action on May 8, 2019 as a Collective Action under the FLSA, along with NYLL and NYCHRL claims. Plaintiff Ignacio Guerra brings this action pursuant to federal and state wage laws in connection with Defendants' alleged failure to pay minimum wage and overtime as required, as well as for wrongful termination under the NYCHRL when he sought to return to work after a medical leave on December 15, 2017 and allegedly requested an accommodation.

Before the collective action status was litigated and discovery engaged in, the parties engaged in a court ordered mediation before Hon. Judge Joseph McKay. By such time however, the Parties had informally exchanged discovery pursuant to the mediation protocol. Defendants' production comprises more than 300 pages of apparently contemporaneous records (some of which are the records of Plaintiff's coworker, who has agreed to settle his claims). During mediation held before Judge McKay on November 26, 2019, the parties reached an agreement to settle the matter for $82,500.

## **FACTUAL ALLEGATIONS**

Wage Allegations

Plaintiff is a former employee of Defendants' restaurant in Washington Heights (Defendants hereafter collectively, the "Employer") where he worked as a delivery person and helper from 2008 to April 10, 2017. At the start of the relevant period in 2012, Plaintiff earned only $280 per week for 72 hours work. Plaintiff alleges violations of federal and state wage and hour laws by Defendants' failure to pay minimum wage and overtime, as well as NYLL spread of hours premium. Plaintiff also seeks penalties for failure to provide pay stubs and wage statements as required during the relevant period.

As to his wage claims, Plaintiff alleges as follows:

May 24, 2012[1]-December 31, 2014: The 72-hour, 6-day period

- From May 24, 2012 through the end of 2012 Plaintiff worked 72 hours a week (9am-9pm 6 days a week) and was paid $270 per week in cash.
- In 2013 Plaintiff worked 72 hours a week (9am-9pm 6 days a week) and was paid $290 per week in cash.
- 2014: Plaintiff worked 72 hours a week (9am-9pm 6 days a week) and was paid $300 per week in cash.

January 1, 2015 -December 31, 2015: The 56-hour, 5-day period
- 2015: Plaintiff worked 56 hours a week and was paid $330 per week in cash.

Plaintiff alleges he worked 5 days per week in this period, 12 hours a day, 4 days a week and one 8-hour day. While Plaintiff had alleged 52 hours in 2015 (paragraph 49) this was a typographical error.

January 1, 2016 through termination on April 10, 2017: The 52-Hour, 5-Day Period
In the following period Plaintiff continued to work 5 days a week but the duration of two of those days was eight hours.
- In all of 2016 through his accident on or about December 14, 2016, Plaintiff worked a reduced schedule of 52 hours a week and was paid $480 per week in cash and check.

---
[1] The parties entered tolling agreements tolling claims for the period from May 24, 2012 through March 25, 2013. See Complaint, paragraph 46.

2

- Upon his return to work in 2017 after 6 weeks off, from on or about January 7 to medical leave on or about April 10, 2017, Plaintiff worked a reduced schedule of 52 hours a week and was paid $480 per week in cash and check.

Defendants deny the Plaintiff's allegations, and deny any violations of any federal or state wage law.

Discrimination Allegations

While Plaintiff brings NYCHRL claims for age and disability discrimination in connection with his termination, such claims are not properly subject to *Cheeks* review and Plaintiff shall not discuss them here. Nonetheless the proposed settlement before this court is intended to be a global resolution.

**Fairness of the Proposed Settlement Agreement**

Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). Rather, the parties must satisfy the Court that their agreement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Crabtree v. Volkert, Inc.*, No. 11-CV-0529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. American Cancer Soc.*, No. 10-CV-3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). Here, the parties meet all five factors.

*1. The Settlement Amount Represents A Significant Amount of the Maximum Exposure Should Defendants View of Disputed Facts Be Accepted At Trial and the Settlement Agreement Avoids Anticipated Burdens at Trial Due to the Litigation Risks Faced by the Parties*

The proposed Settlement Agreement provides that Defendants agree to pay Plaintiff the total sum of Eighty-Two Thousand, Five Hundred Thousand Dollars ($82,500.00) for full-resolution of all the Plaintiff's claims and a general release.

The Parties disagree on the accurate range of Plaintiff's possible recovery. Plaintiff alleges that if they are successful on all aspects of their minimum wage and overtime claims, including those allegations based on their recollections alone, they could recover up to approximately

$163,627.96 at trial inclusive of 100% liquidated damages and all penalties. Such recovery reflects approximately $76,813.98 to Plaintiff in wages. (See Exhibit II, Plaintiff's Damages Calculations). While the proposed settlement amount represents only 50.4% of Plaintiff's estimate of maximum exposure, Plaintiff seek the court's approval of the proposed Settlement Agreement as fair for representing a substantial proportion of the maximum exposure, an award in excess of the wages allegedly owed according to him. *See Chamoro v. 293 3rd Café Inc.*, 2016 U.S. Dist. LEXIS 136101, at *4 (S.D.N.Y., Sep. 30, 2016) (approving the settlement amount in a FLSA settlement agreement as fair because "the $52,000 settlement amount constitutes a substantial proportion [71.8%] of the total possible amount that [plaintiff] could recover if successful at trial"). Under Defendants' calculations, even assuming *arguendo* that Plaintiff is not a service worker, Plaintiff is owed less than $4,000, and thus the recovery under Defendants' view far exceeds the liability. Further, Plaintiff submits the Settlement Amount is fair in light of the risk that Defendants' view of maximum exposure will ultimately be proven at trial.

It may be debated whether the settlement amount is presumptively fair when weighed exclusively against the Plaintiff's view of maximum exposure. Defendants, however, produced records showing that Plaintiff worked substantially fewer hours per week than Plaintiff alleged. Thus, under Defendants' version of maximum exposure, the settlement agreement is presumptively fair as far exceeding Defendants' estimate of maximum exposure. *See, e.g.*, *Chamoro v. 293 3rd Café Inc.*, 2016 U.S. Dist. LEXIS 136101, at *4 (S.D.N.Y. Sept. 30, 2016).

Given the dispute over maximum exposure, this factor is, at worst, neutral with respect to fairness. Even if, however, the court finds that solely Plaintiff's maximum exposure is relevant with respect to this factor, Plaintiff avers that any lack of presumptive fairness with respect to this factor is outweighed by the fairness of the other factors.

2.  *Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses*

Second, settling the parties' claims at this point will avoid continuing litigation costs for both parties. *Wolinsky*, 900 F. Supp. 2d at 335. Had this action not settled, numerous depositions would take place, including the depositions of Plaintiff, the individually named Defendants, and a number of non-party witnesses. Moreover, the parties would have engaged in more extensive document discovery and possibly engaged expert witnesses to opine on the parties' alleged damages. Finally, there would have been the potential for extensive motion practice, including mutual motions for summary judgment on issues such as whether Plaintiff is a tipped employee and whether Defendants are eligible to take the tip credit. Therefore, the Plaintiff would not have seen any award until a long time in the future whereas with the proposed Settlement, Plaintiff receives money much sooner.

3.  *The Settlement Agreement Avoids the Very Real Litigation Risks Faced by the Parties*

Third, the settlement accounts for the Parties' respective risks in proceeding with the litigation. *Wolinsky*, 900 F. Supp. 2d at 335. Defendants risk an adverse judgment against them and the fact-finder believing Plaintiff's allegations regarding the number of hours he worked. On the other hand, Plaintiff may not win his case, or if he prevails, the fact-finder may determine that Defendants' produced pay records that demonstrate that Plaintiff worked significantly fewer hours

4

than alleged. The risk of going to trial for both parties is substantial. In light of these litigation risks, the decision to forgo the burden and expense of trial is reasonable.

4. *The Settlement Agreement is the Product of Arm's-Length Bargaining Between Experienced Counsel*

The terms of the Settlement Agreement were reached through arm's-length negotiations between the Parties' respective counsel after engaging in significant investigation and due diligence regarding the merits of Plaintiff's claims and the likelihood of success at trial and the settling Defendants' defenses. Plaintiff's counsel contacted Defendants and worked with Defendants' counsel for nearly a year reviewing records and attempting to settle the matter outside of the litigation process. Ultimately, the parties engaged in a lengthy settlement conference with the Court-appointed Mediator. There is no doubt that the parties were informed about the strengths and weaknesses of their positions.

Plaintiff has been represented by the firm Mirer Mazzocchi & Julien, PLLC. Mirer Mazzocchi & Julien, PLLC is a three-person law firm practicing almost exclusively in federal employment litigation with a concentration on wage claims under FLSA and associated state laws in New York. Combined, Plaintiff's attorneys have almost 20 years of experience in the almost exclusive prosecution of FLSA matters and over 60 years of combined experience concentrating in litigation matters generally. Specifically, Plaintiff is represented by Ria Julien who has been working in the employment law field and FLSA since 2014. Ms. Julien is a partner at the firm. She has handled complex employment litigation matters in the SDNY and brokered multi-party Collective Actions, in one case resulting in seven-figure settlement. Her fees have been approved at rates of $350 and $400 per hour. See 13-cv-7249; 14-cv-4030 (approving a blended rate of $500, with Ms. Julien at $350 per hour); See also 16-cv-6759 (approving $400 per hour for Ms. Julien). The settling Defendants have been represented by David S. Rich of the Law Offices of David S. Rich, LLC. Mr. Rich is a graduate of the Columbia University School of Law and the University of Pennsylvania. He has more than twenty years of experience defending employers and businesses and representing other clients in employment and business lawsuits and matters, including many FLSA disputes and arbitrations similar to the one here. Mr. Rich holds an AV (Preeminent) Peer Review Rating from Martindale-Hubbell. Mr. Rich has been selected by Super Lawyers Magazine as a New York Metro Super Lawyer (Employment & Labor) for 2015, 2016, 2017, 2018, and 2019 and as a New Jersey Super Lawyer (Employment and Labor) for 2019 and 2020.

5. *The Factors Weigh In Favor of Settlement Approval*

Three of the four factors *indisputably* weigh in favor of settlement approval. With respect to the range of possible recovery, this factor is neutral, and, under Defendants' version of the facts, the settlement amount is presumptively fair, representing a sum far exceeding their calculation of maximum exposure. As discussed *supra*, the other three factors all weigh in favor of approval. Plaintiff seeks the court's approval of the proposed settlement as fair to him in light of the totality of the circumstances. Further, at this stage in the litigation, Plaintiff is not aware of the presence of any similarly situated employees employed by the settling Defendants who wish to join this

matter as opt-in Plaintiffs under Rule 216(b). In addition, Plaintiff has not been coerced by the Defendants to settle this case. *See Cisneros v. Schnipper Rest. LLC,* 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the Defendant.").

6.      *The Attorneys' Fees Of 33.33 Percent Of The Settlement Amount Are Reasonable and Should be Approved*

In addition to reviewing the substantive fairness of the terms of the Settlement Agreement, the Court must also make a determination as to the fairness of the attorneys' fees proposed. *Penafiel v. Rincon Ecuatoriano, Inc.,* No. 15 Civ. 112 (PAE), U.S. Dist. LEXIS 160352 (S.D.N.Y. Nov. 30, 2015). Significantly, the attorneys' fees in this matter, are one third of the total settlement amount thus $27,500, plus $400 in costs attributable to the filing fee, as agreed by Plaintiff in his retainer. (See Exhibit III, Retainer). "Courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.,* No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890 (S.D.N.Y. Dec. 14, 2015); *see also Gaspar v. Personal Touch Moving, Inc.,* No. 13-CV-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District"); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.,* No. 13-CV-6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (collecting cases); *Fang Xiao v Grand Sichuan Int'l St Marks, Inc.,* 1:14-cv-09063(RA), 2016 U.S. Dist. LEXIS 99669, at *1 (S.D.N.Y. July 29, 2016).

7. *The Settlement Agreement Does Not Include Any Clauses Forbidden by* Cheeks

Finally, the settlement also meets the guidelines set forth in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). *See also Gonzales v. Lovin Oven Catering of Suffolk, Inc.,* 2015 WL 6550560 (E.D.N.Y. Oct. 28, 2015). Specifically the instant settlement does not contain a confidentiality provision prohibited by *Cheeks*. Further while the release agreed to by Plaintiff is a general release as to Defendants, and thus releases the Plaintiff's NYCHRL claims, the parties' wish to resolve all their disputes via a general release is not *per se* improper under *Cheeks, supra. See Panganiban v. Medex Diagnostic & Treatment Ctr.,* No. 15-CV-2588(AMD)(LB), 2016 WL 927183, at *3 (E.D.N.Y. March 7, 2016) (allowing general release where settlement is "substantial" and the complaint also alleged Title VII claims).

### III.  Conclusion

For the reasons stated herein, the Parties submit that the executed Settlement Agreement is a fair and equitable resolution of a bona fide dispute between Plaintiff and Defendants and that the proposed fees are appropriate in this case. If the Court finds the Settlement Agreement acceptable, the Parties will file a Stipulation of Dismissal with Prejudice.

                                                Respectfully submitted,

s/ David S. Rich (DR-2492)                s/ Ria Julien
David S. Rich                                        Ria Julien

| | |
|---|---|
| Law Offices of David S. Rich, LLC<br>12 First Street<br>Englewood Cliffs, NJ 07632<br>Tel.: (201) 592-7200<br>E-mail: drich@davidrichlaw.com<br><br>-or-<br>155 East 44th Street, 6th Floor<br>New York, NY 10017<br>Tel.: (212) 209-3972<br>*Counsel for Defendant/Counterclaim Plaintiff J.A.E.-L.A.R. Restaurant, Corp. doing business as Caridad Restaurant and For Defendants Amaury Espinal, Amin Espinal, and Laura Rodriguez* | Mirer Mazzocchi & Julien, PLLC<br>1 Whitehall St., 16th floor<br>New York, NY 10004<br>Telephone: (212) 231-2235<br>Email: rjulien@mmsjlaw.com<br>*Attorneys for Plaintiff* |

Enclosures:
Exhibit I: Settlement Agreement
Exhibit II: Plaintiff's Damages Calculations
Exhibit III: Retainer

cc:    All counsel of record via ECF